UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

AUDREY CHAPMAN

        Plaintiff,

   v.

INSPIRA HEALTH NETWORK, INC.
et al.

        Defendants.

1:17-cv-03145-NLH-JS

OPINION

---

APPEARANCES:

JEREMY CHARLES ROSENBAUM
THE LAW OFFICES OF JEREMY C. ROSENBAUM
2323 RACE STREET - SUITE 1016
PHILADELPHIA, PA 19103-1089
    Attorney for the Plaintiff.

THOMAS PASCHOS
THOMAS PASCHOS & ASSOCIATES, PC
30 NORTH HADDON AVENUE - SUITE 200
HADDONFIELD, NJ 08033
    Attorney for the Defendants.

HILLMAN, District Judge

    This action concerns Plaintiff Audrey Chapman's employment at Inspira Health Network, Inc.  Plaintiff has alleged that in the course of her employment, Defendants discriminated against her on the basis of race, retaliated against her for her whistleblower activity, breached its contract with her, and tortiously interfered with her contractual rights.  This matter comes before the Court on Defendants' motion for summary judgment and a joint motion to seal.

For the reasons that follow, the Court will grant in part and deny in part Defendants' motion for summary judgment. The Court will grant the parties' joint motion to seal.

BACKGROUND

The Court takes its facts from the parties' briefing, the material facts not in dispute, and the procedural history of this case. The facts relevant to this case are summarized below.

Plaintiff, Dr. Audrey Chapman ("Chapman"), is an African-American woman. She graduated from Edward Via Virginia College of Osteopathic Medicine in October 2014. Inspira Health Network, Inc. ("Inspira") is a private corporation, organized as a nonprofit entity under the laws of New Jersey. Inspira's principal place of business is located in Vineland, New Jersey. Inspira facilitates several medical residency programs for licensed physicians at the beginning of their careers.

Defendant Dr. Michael Geria is a doctor of osteopathy and Inspira's Director of Medical Education. Dr. Douglas Hargrave served as Inspira's program director for family residents. Defendant Nicole Zucconi is a doctor of osteopathy who served as assistant program director for family medicine residents.

Plaintiff was accepted into the family medicine residency program at Defendant Inspira on a "scramble" basis in 2015. She signed her Residency Agreement in March 2015 for a one-year

2

term.  This Agreement states that her residency would start on
July 1, 2015 and end on June 30, 2016.  This Agreement also
included several terms that obligated Inspira to meet certain
educational and professional requirements throughout the course
of Plaintiff's residency.[1]  Plaintiff alleges that at the time
she started her residency, she was the only African-American
resident in the family medicine program at Inspira.

According to Plaintiff, residents in the family medicine
program rotated to a different subspecialty at the beginning of
each month.  Plaintiff states that she completed her first
rotation in surgery in July 2015 before moving to inpatient
family medicine in August.  During her inpatient rotation,
Plaintiff was supervised by Dr. David Aderholdt, a white, third-
year resident in family medicine.  Plaintiff alleges Aderholdt
has a close friendly relationship with Defendant Zucconi through
Aderholdt's wife.  Plaintiff alleges that Aderholdt harassed her
and treated with "unreasonable disfavor, particularly as
compared to non-black interns."[2]

---

[1] Specifically, Plaintiff's complaint highlights Sections 3.2,
3.3, 3.5, 3.6, 3.8, and 3.9 of the agreement.  ECF No. 1, at ¶
9.

[2] Plaintiff details a number of instances of this alleged
harassment, including "(a) speaking to her in a belittling tone
and/or screaming at her, and embarrassing her in front of others
(b) threatening Plaintiff's position by telling her 'we have
fired people before' and making her feel that she would have not
a job with Defendant IHN the following year; (c) telling

Case 1:17-cv-03145-NLH-JS   Document 71   Filed 09/25/20   Page 4 of 36 PageID: 1719


Plaintiff also claims that Aderholdt told her to "go home" and "leave the building" in August 2015. Plaintiff contends that doing so would have constituted abandonment of her job, and she did not comply with Aderholdt's instructions to leave. This incident prompted Plaintiff to contact Defendant Zucconi and inform her of Aderholdt's conduct. Plaintiff alleges that during her conversation with Zucconi, she sought to "find productive alternatives to being paired with Dr. Aderholdt in the future" but asked not to escalate the issues beyond the Zucconi.

In August 2015, Plaintiff alleges that during a meeting with Dr. Stephanie Flaherty, the chief resident in family medicine, she alerted Flaherty, Ralph Vicente, and another Inspira employee that Aderholdt had sent text messages with patient names, which Plaintiff alleges amounted to a Health Insurance Portability and Accountability Act ("HIPAA") violation. According to Plaintiff, Flaherty noted that text messaging was an improper way to avoid Inspira's sign-out procedure. Plaintiff claims to have seen and received similarly

_____

Plaintiff he did not want her on his rotation; (d) telling Plaintiff she could not see any of his patients; (e) telling Plaintiff she was a 'problem' and threatening to email Defendants Geria and Zucconi, as well as Douglas Hargrave, DO, the official Program Director of the Family Medical Residency Program; and, (f) referring to other residents as "Dr." and referring to Plaintiff by her first name, as if she were a medical student." ECF No. 1, at ¶ 15.

improper text messages from Inspira's other attending physicians.  According to Plaintiff, no action was taken to address this practice.

Flaherty testified that in August 2015, the family medicine faculty meeting held a meeting.  During this meeting, various residents discussed Plaintiff's difficulty accepting constructive criticism.  Plaintiff's disagreements with Aderholdt were also considered at this meeting.  Flaherty further testified that in September 2015, an email between Flaherty, Hargrave, Zucconi, and Brenda Mulford, the office coordinator for the family medicine residency program, noted many instances of Plaintiff's unprofessional behavior as well as concerns about her medical knowledge and efficiency.

On October 16, 2015, Plaintiff met with Defendant Geria, Hargrave, Mulford, and Ralph Vicente, Inspira's Director of Human Resources.  According to Plaintiff, she was informed that the purpose of this meeting was the discuss the findings of Inspira's investigation into her complaint against Aderholdt in August 2015.  Plaintiff alleges that she was told Inspira had "done its 'due diligence,' and found no grounds for disciplining Dr. Aderholdt" and that her request not to work with him in the future was denied.  Plaintiff contends that Inspira did not do its due diligence during the course of this investigation because it did not interview certain witnesses.

5

Plaintiff alleges that this meeting turned to complaints that had supposedly been received about the Plaintiff and her behavior.  According to the Plaintiff, during the course of this discussion, she expressed alarm about what she perceived to be unlawful deception committed by Inspira's medical staff, including falsification of a patient's medical history to cover up for "recklessly botching surgery."[3]  Plaintiff contends that Defendants Geria and Inspira did not respond receptively to this disclosure.  Inspira contends that Plaintiff refused to provide any details of this event, including the date of the incident, any details about the patient, or the doctors allegedly involved.  According to Plaintiff, when the meeting ended, Defendant Geria stated that unless new allegations arose, he would consider the complaints against Aderholdt and the Plaintiff closed.

On October 19, 2015, Plaintiff contends that she wrote to Defendant Geria regarding bullying and "tattling" among

---

[3] Specifically, Plaintiff alleges that she witnessed an attending physician perform a procedure on a patient "despite clearly not knowing what he was doing, fumbling around and failing to properly assemble or operate the surgical equipment."  Plaintiff alleges that a pulmonologist had been called to perform this procedure, but was not permitted to do so.  Plaintiff alleges that this procedure was dangerous because the attending physician did not use an ultrasound, but instead "instructed a resident to blindly poke around," resulting in "serious and unnecessary complications, such as difficulty breathing and procedures to re-intubate the patient and re-inflate her lung." ECF No. 1, at ¶ 25.

residents.  Plaintiff alleges she requested that Defendant
Geria, as the head of residency programs, either hold a
conference or send a mass email regarding this issue.  According
to Plaintiff, Defendant Geria declined to take either action.
Plaintiff contends that at the end of October 2015, Defendant
Geria confirmed that the allegations against her were no longer
an issue and that neither Plaintiff nor Geria referenced these
complaints in a November 2015 meeting.

In December 2015, Plaintiff alleges that every resident
except her received a $100 gift card from Defendant Zucconi for
Christmas.  Plaintiff alleges that she was subjected to a
"humiliating runaround" when she tried to claim her gift card.

After Defendant Zucconi returned from maternity leave, she
met with Plaintiff on December 18, 2015.  The purpose of this
meeting was purportedly to discuss Plaintiff's six-month
evaluation.  Plaintiff contends that this evaluation did not
occur and she never learned if she had passed or failed her
rotations.  Instead, Plaintiff alleges she was presented with a
Performance Improvement Plan ("PIP") as a disciplinary measure.
Plaintiff alleges that the only stated grounds for this measure
were the same allegations that Defendant Geria had confirmed
were no longer an issue.  Zucconi testified that in her opinion,
Plaintiff was creating a hostile work environment for the other
residents.

Plaintiff alleges that following this meeting, she returned to work and had a conversation with Dr. Shirley Ayuk-Takem. Plaintiff alleges that during this conversation she expressed her frustration with the attacks on her professionalism. Plaintiff alleges that she was "noting the absurdity of the situation" when she remarked "I should just kill myself" to Ayuk-Takem.

Ayuk-Takem reported this comment to the attending physician, who asked Plaintiff to report to the emergency room for evaluation. Plaintiff was examined by a doctor and a social worker before seeing a psychiatrist. Plaintiff alleges that she was told she could safely return to work following these examinations.

On December 21, 2015, Plaintiff reported for work and alleges she was told to meet with Defendant Geria before beginning her shift. Plaintiff alleges she was placed on an immediate and involuntary paid leave of absence. Plaintiff states she was in her intensive care rotation, which was scheduled to end on January 3, 2016. Plaintiff alleges that she underwent a psychological/psychiatric examination on January 12, 2016 and was cleared to return to work.

Plaintiff returned to work on January 27, 2016 and was presented with a PIP. The parties dispute when this PIP was first contemplated. Plaintiff alleges this process started as

early as October 14, 2015.  Defendant alleges this action was
contemplated starting in December 2015.

The January 2016 PIP states, in part, that Plaintiff was
placed on a PIP for unprofessional behavior.  According to
Plaintiff, the PIP stated she would be placed on probation for
three months and would have "monthly meetings with the program
directors (either Dr. Hargrave or Dr. Zucconi)."  Plaintiff
alleges that only one monthly meeting occurred on February 19,
2016.  Plaintiff states that during this meeting, Defendant
Geria and Hargrave addressed her behavior and performance during
her obstetrics and gynecology rotation, describing her
performance as very good.  Plaintiff also alleges that other,
non-black residents who received a PIP or notifications of
performance issues did have monthly meetings with Defendant
Zucconi.

Zucconi testified that it was not uncommon for residents to
be placed on a PIP or face discipline.  Of the six family
medicine residents who started in July 2015, two were terminated
before the year ended, one transferred to internal medicine, and
another transferred to another program in New Brunswick, New
Jersey.  That year, only one of six residents completed a
residency at Inspira.

In March 2016, Plaintiff filed her first complaint about
another resident, specifically Dr. Kristen Trom.  According to

Plaintiff, Trom is not black.  Trom had previously been a topic of discussion at a faculty meeting and had been warned to "watch what she says," and reprimanded for "talking badly about attendings."  Trom was eventually cleared on any accusations and, according to Plaintiff, did not receive any discipline.

Plaintiff alleges that on March 6, 2016, during a night shift, she overheard Dr. Sandra Mason, a second-year resident in family medicine, making "unprofessional and disparaging remarks" about Plaintiff to another doctor.  According to Plaintiff, Mason is not black.  Plaintiff alleges that she had observed other unprofessional behavior by Mason before March 6 and had previously made a complaint to Defendant Geria, Hargrave, and Vicente on March 8.  Plaintiff filed another formal complaint against Mason.  On April 25, 2016, Plaintiff received a letter from Vicente stating that it did not appear that any inappropriate behavior or violations of company policy had taken place with regard to Mason.

According to Vicente, he had observed what he characterized as "very odd behavior" by Plaintiff, including covering her ears and saying she did not want to hear anything Vicente was saying and falling on the floor crying in the face of criticism. According to Dr. George Dendrinos, a member of the faculty at Inspira, Plaintiff had many interpersonal conflicts with other residents at Inspira.  Dendrinos stated that other residents did

not want to work with Plaintiff, that Plaintiff was
confrontational and that Plaintiff did not properly follow-up
with patients.  Dendrinos also stated that Plaintiff had accused
Defendants Geria and Zucconi of lying and called them liars.
Flaherty testified that she also did not observe any improvement
in Plaintiff's performance or demeanor after the Plaintiff was
placed on a PIP.

In April 2016, the family medicine faculty met again.  Dr.
Jack Shields, a member of Inspira's family medicine department,
attended this meeting and testified that everyone was "in
agreement of the mutual release of contract or non-renewal for
PGY2 contract" for Plaintiff.  According to Plaintiff, the
minutes of this meeting also show that the faculty "fear[ed]
working with [Plaintiff] due to her accusations."

Plaintiff met with Defendants Geria and Zucconi, Hargrave,
and Vicente on May 5, 2016.  At this meeting, Plaintiff alleges
she was told that her residency agreement was not going to be
renewed and that she was being dismissed from the residency
program for "persistent unprofessional behavior and failure to
comply with a performance improvement plan."  Zucconi testified
that she felt threatened at this meeting because Plaintiff made
the remark "life changes in an instant" after being told her
contract would not be renewed.

11

Plaintiff alleges that she requested an extension of approximately six weeks so she could complete the intensive care rotation that had been cut short by her involuntary leave of absences.  On June 24, 2016, the last day of Plaintiff's scheduled residency, Plaintiff alleges that she met with Defendant Zucconi.  At this time, Plaintiff claims that Zucconi have her a document called a "ACOFP Core Competency" Evaluation. According to Plaintiff, this document states that Plaintiff received credit for ten months of her training.  This document also shows that Plaintiff had reached an appropriate level of training in the area of "Interpersonal and Communication Skills."  Another evaluation Zucconi prepared and signed acknowledged that Plaintiff's "performance in June on the Family Medicine service did improve."  Hargrave testified that he provided Plaintiff with letters of recommendation, despite believing that some of her behavior had been inappropriate.

Plaintiff also alleges that at this time she was informed her request for an extension had been denied.  Plaintiff alleges that Inspira has made such an accommodations for another intern, Dawn Krystusa, after she took a leave of absence during her residency the previous year.  Inspira contends that Plaintiff received full credit for her first year of residency and that after Hargrave looked at her rotations, he determined that Plaintiff was not required to do any additional time.  Plaintiff

12

asserts that her documents reflect that she had "one year of family medicine training" but do not reflect the credit she earned.  Plaintiff also contends that she was only given credit for ten months of her residency, not twelve.

Plaintiff filed this complaint on May 5, 2017, including several counts: (1) violations of Section 1981: race discrimination in employment (against all Defendants); (2) violations of the New Jersey Law Against Discrimination ("NJLAD"): race discrimination in employment (against all Defendants); (3) Violations of the New Jersey Conscientious Employee Protection Act ("CEPA"): whistleblower retaliation (against all Defendants);(4) breach of contract (against Inspira); (5) breach of implied covenant of good faith and fair dealing (against Inspira); and (6) tortious interference (against Geria and Zucconi).  Defendants answered this complaint on September 27, 2017, asserting twenty-three affirmative defenses.[4]

_____

[4] These defenses include: (1) Plaintiff failed to state a claim upon which relief can be granted; (2) Plaintiff is not entitled to the relief sought as a matter of law; (3) Plaintiff failed to mitigate damages; (4) Defendants have not committed any unlawful discrimination and Plaintiff is not entitled to relief; (5) Plaintiff's claims are barred by the statute of limitations; (6) Defendants did not violate any legal duties owed to Plaintiff; (7) any injury to Plaintiff was the result of her own conduct or persons other than Defendants; (8) Plaintiff cannot establish a prima facie case of discrimination; (9) Plaintiff has failed to state a claim for pain, suffering emotional distress, embarrassment, humiliation, illness and emotional injury; (10)

During discovery, Plaintiff produced eighty-nine recordings of staff and faculty at Inspira taken while in her residency. Plaintiff claims she started making recordings while at Inspira because Flaherty told Plaintiff "it's your word versus their word," regarding an incident that occurred during Plaintiff's shift.  Plaintiff had allegedly informed a number of Inspira staff members that she was recording them during the course of

---

Plaintiff has failed to state a claim upon which pack pay, front pay, overtime, lost fringe benefits, attorney's fees and costs, declarative or injunctive relief can be awarded; (11) Plaintiff has failed to state a claim upon which relief of compensatory or punitive damages may be granted; (12) Plaintiff's claims are barred by her failure to mitigate damages; (13) Plaintiff's claim for punitive damages is barred by public policy; (14) Plaintiff's claim for punitive damages is in contravention of Defendants' rights under the Commerce Clause, the Due Process Clause of the Fifth and Fourteenth Amendments; the equal protection clause of the Fourteenth Amendment, constitutional prohibition against vague and overbroad laws and the corresponding provisions under the Pennsylvania state constitution; (15) Plaintiff did not suffer any intentional discrimination based on her race, gender, age and/or any retaliation by Defendants; (16) Defendants did not discriminate against Plaintiff because of her race, sex, age, harassed Plaintiff, and/or subjected Plaintiff to a hostile work and/or retaliated against Plaintiff; (17) there is no merit to Plaintiff's allegations of race discrimination, gender discrimination, sexual harassment, hostile work environment, retaliation, and/or constructive discharge; (18) the allegations do not establish a constructive discharge claim; (19) Plaintiff's claims are barred by estoppel and/or equitable estoppel; (20) Plaintiff's claims are barred by her own breaches of contract or other duties; (21) Defendants did not breach a duty, contractual or otherwise, to Plaintiff; (22) Plaintiff's damages are not attributable to any breaches or wrongdoing by Defendants; (23) Defendants reserve the right to amend its answer to assert additional affirmative defenses based on information obtained during discovery.

her residency and contends that on at least one occasion Defendant Geria told her it was "fine" for her to tape record a meeting.  Plaintiff further stated that she was never told not to record her coworkers and that the recordings were not mentioned in her PIP.  At least one member of Inspira's faculty has testified that it was "common knowledge" that Plaintiff made these recordings.

Plaintiff does not contend that these recordings include comments made about her race.  Plaintiff has conceded that "there were no 'words' or comments regarding her race on the recordings, but argued that the actions addressed do indicate discrimination."  ECF No. 62, at ¶ 20.

Defendants filed a motion for summary judgment on September 30, 2019.  The parties filed a joint motion to seal certain documents on December 24, 2019.  These matters have been fully briefed and are ripe for adjudication.

ANALYSIS

A. Subject Matter Jurisdiction

This Court has original federal question jurisdiction over this case under 28 U.S.C. § 1331.  Plaintiff has alleged violations of 42 U.S.C. § 1981.  The Court has supplemental jurisdiction over any common law causes of action asserted by Plaintiff under 28 U.S.C. § 1367 because these claims are part of the same case or controversy.

B. Summary Judgment Standard

Summary judgment is appropriate when the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex, 477 U.S. at 322-23 (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

C. Inspira's Motion for Summary Judgment

Plaintiff has withdrawn her claims under CEPA and the NJLAD (Counts II and III). ECF No. 64, at 20 n. 6. This opinion will address the remaining counts below.

17

1. Chapman's Race Discrimination in Employment Claims (Count I)

The Court will analyze Count I of Plaintiff's claim using the <u>McDonnel Douglas</u> burden-shifting framework.  See <u>Stewart v. Rutgers Univ.</u>, 120 F.3d 426, 432 (3d Cir. 1997) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1972)).  This framework has three basic steps and is its own separate analysis.  <u>Hicks v. New Jersey Department of Corrections, et al.</u>, No. 3:16-cv-00927, 2019 WL 5587324, at * 4 (D.N.J. Oct. 30, 2019).  First, a plaintiff must put forward a prima facie case of race discrimination by a preponderance of the evidence. <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 797 (3d Cir. 2003). If a plaintiff succeeds at this step, the analysis continues to step two, where the burden shifts to the defendant to provide "a legitimate, nondiscriminatory reason for its actions."  <u>Tucker v. Thomas Jefferson Univ.</u>, 484 F.App'x 710, 712 (3d Cir. 2012). If the defendant can provide such an explanation, the analysis proceeds to the third step.  At this step, "the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely a pretext for intentional discrimination."  <u>Makky v. Chertoff</u>, 541 F.3d 205, 214 (3d Cir. 2008).  If each side meets its burden at each stage, then summary judgment is inappropriate.  <u>Whishkin v. Potter</u>, 476 F.3d 180, 185 (3d Cir. 2007).

Step One: Chapman's Prima Facie Case

The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981) (quoting Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978)). For her claim of discrimination under Section 1981, McDonald must show: "(1) she belongs to a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances support an inference of unlawful discrimination." Hicks, 2019 WL 5587324 at *4 (citing In re Tribune Media Co., 902 F.3d 384, 402 (3d Cir. 2018)). The elements of the prima facie case are not meant to be "applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." Geraci v. Moody-Tottrup Int'l, 82 F.3d 578, 581 (3d Cir. 1996). The Supreme Court has held that this "burden of establishing a prima facie case of disparate treatment is not onerous." Burdine, 450 U.S. at 253.

If non-members of the protected class receive more favorable treatment than plaintiff under similar circumstances, these circumstances support an inference of unlawful discrimination. Hicks, 2019 WL 5587324, at * 4 (citing Sarullo,

352 F.3d at 797 n 7).  Hiring someone not in the protected class as a replacement is also a common circumstance giving rise to an inference of unlawful discrimination.  <u>May v. PNC Bank</u>, No. 18-2933, 2020 WL 370043, at *7 (E.D. Pa. Jan. 22, 2020).

Defendants do not contest that Plaintiff belongs to a protected class, is qualified for her position, or that she suffered an adverse employment action.  Defendants argue that the circumstances surrounding Plaintiff's employment at Inspira do not support an inference of unlawful discrimination.  Defendants point to Plaintiff's own testimony to support its argument that Plaintiff cannot prove any discrimination due to her race or any discriminatory intent because of her race.  ECF No. 52-2, at 22-24.  In her deposition, Plaintiff stated that she contends that her contract was not renewed because of her race.  Plaintiff also stated that she talked about her race at meetings, but none of her supervisors or fellow residents made disparaging comments regarding her race.  She further stated that Defendant Geria, Defendant Zucconi, Vicente, and Hargrave did not make comments about her race.  Instead, Plaintiff stated that "the actions that they were doing suggested race."  Plaintiff admitted that in the eighty-nine recordings she took and the emails she produced, the subject of race was not discussed.  ECF No. 52-3, at 306-09.  Defendants also point to

20

Inspira's hiring record as evidence that there is no pattern of discrimination due to race at Inspira.[5]

Plaintiff counters that she has introduced enough comparator evidence to establish a prima facie case of racially disparate treatment.  According to Plaintiff, it is indisputable that she was the only African-American or black resident and that she was treated differently.  To support this claim, Plaintiff highlights that she only had one meeting with Defendant Geria and Hargrave during the course of her PIP, while other, non-black residents had multiple meetings after being placed on a PIP.  Plaintiff further emphasizes that Defendant Zucconi avoided her, refused to take her phone calls, and failed to schedule meetings with Plaintiff.  Plaintiff also asserts that two other non-black doctors, Dr. Trom and Dr. Mason, received more favorable treatment after Plaintiff made legitimate complaints about their objectionable conduct. Plaintiff also highlights that Inspira granted a white intern in the same residency program a four to six-week extension to complete her intern year following a year of absence, but denied Plaintiff's similar request.  As part of her prima facie case, Plaintiff has asserted that Defendant Inspira hired a non-

_____

[5] In support of this argument, Inspira introduced evidence that since its inception, Inspira has accepted into its residency program 23 Black-Americans, 15 Hispanic-Americans, and 67 Asian Americans.  ECF No. 52-2, at 24.

African American as a replacement after she left the Family
Medical Residency Program.

The Court finds that Plaintiff has met her burden in
establishing a prima facie case of discrimination.  Recognizing
that this is not an onerous burden, the Plaintiff has shown that
the different treatment she faced, if otherwise unexplained, is
more likely than not based on the consideration of impermissible
factors.  Defendants' explanations for this treatment will be
discussed in the next step of the McDonnel Douglas analysis.

Step Two: Defendants' Legitimate, Nondiscriminatory Reasons for
its Actions

At this stage, defendants need only "introduce[e] evidence
which, taken as true, would permit the conclusion that was a
nondiscriminatory reason for the unfavorable employment
decision."  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).
A defendant only has the burden of production, not the burden of
persuasion at this stage and "need not prove that the tender
reason *actually* motivated its behavior."  Id. (emphasis in
original).  The Third Circuit has characterized this burden is
"relatively light."  Id. at 762

Defendants argue that it has the freedom to fire its
employees "'for a good reason, bad reason or reason at all,' as
long as there is no intentional discrimination."  ECF No. 52-2
at 26 (citing Maiorino v. Sherign-Plough Corp., 302 N.J. Super.

323, 345 (App. Div. 1997)).  In this case, Defendants argue that
they did have a good, non-discriminatory reason for not renewing
Plaintiff's contract.  Defendants explain the adverse employment
actions taken against Plaintiff by highlighting that she
violated HIPAA, created a hostile work environment, secretly
recorded Inspira employees, doctors, and human resources
personnel, called Defendants Geria and Zucconi liars, and acted
unprofessionally.

In contrast, Plaintiff refers to Defendants' explanations
as a "mishmash of nonsensical excuses."  ECF No. 64, at 13.
Plaintiff argues that the recordings she took were not secret,
and Defendants did not become aware of any HIPAA violations
until after the commencement of litigation.  Therefore,
Plaintiff characterizes Defendants' explanation as an "absurd
post hoc fabrication."  ECF No. 64, at 14.

Because this burden is "relatively light," Fuentes, 32 F.3d
at 762, the Court finds that Defendants have met their burden at
this step of the analysis.  Defendants have offered a non-
discriminatory explanation for the incidents Plaintiff
describes, including the non-renewal of her contract.  The Court
will proceed to step three of the McDonnel Douglas analysis.

Step Three: Whether Defendants' Explanation is Pretextual

At this step, a plaintiff must "convince the fact finder
'both that the reason was false, and that discrimination was the

23

real reason.'" Fuentes, 32 F.3d at 763 (quoting St. Mary's
Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in
original)).  This analysis "focuses on whether there is
sufficient evidence from which a jury could conclude that the
purported reasons for the defendant's adverse employment actions
were in actuality a pretext for intentional race discrimination.
Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999).
A plaintiff can meet his or her burden in several ways: by
showing that the defendant had previously discriminated against
the plaintiff, that the defendant had previously discriminated
against other persons within the plaintiff's protected class, or
that the defendant has treated more favorably similarly situated
persons not within the protected class.  See Simpson v. Kay
Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir.
1998).

     Plaintiff asserts that Defendants' reasons are pretextual
because she was never disciplined for her alleged HIPAA
violations or recordings.  Plaintiff also emphasizes that if she
was disciplined for her alleged violations of HIPAA, this is
further evidence of discrimination because Inspira did not
discipline Aderholdt for his violations of HIPAA.  Next,
Plaintiff argues that Defendants' explanation that she was
creating a hostile work environment is pretextual because
Inspira had allowed an "environment of gossip, rumor and

accusation to thrive" and that Plaintiff is a victim of this
culture.  ECF No. 64, at 16-17.  Finally, Plaintiff points to
her evaluations, which show that Defendant Zucconi indicated
Plaintiff "meets expectation" and exhibited professionalism.

Defendants argue that Plaintiff has failed to refute
Defendants' legitimate business reasons for not renewing her
contract.  Defendants emphasize again that "courts have no
business telling [companies] . . . how to make personnel
decisions, which may be objectively or subjectively based."  ECF
No. 52-2, at 25 (citing Maiorino, 302 N.J. Super. 323).

The Court finds that Plaintiff has not met her burden at
this stage.  Plaintiff not proven that a reasonable factfinder
could conclude Inspira's reasons were false or that
discrimination was the real reason for Inspira's decision not to
renew her contract or its handling of her PIP.  Plaintiff has
not shown that Inspira had previously discriminated against her,
nor has the Plaintiff shown that Defendants have previously
discriminated against others in her protected class.  In fact,
several Inspira residents were placed on PIPs as Plaintiff was.
Furthermore, multiple Inspira family medicine residents were
terminated before their year was finished.

Plaintiff has not established that Defendants treated more
favorably similarly situated employees not within Plaintiff's
protected class.  Though Plaintiff has identified other

employees at Inspira who were subject to PIPs and faced complaints for unprofessional behavior, Plaintiff has not shown that these employees were similarly situated to Plaintiff. Inspira has shown that other employees had concerns about Plaintiff's medical knowledge and efficiency, her practice of recording her coworkers, and her ability to take constructive criticism, none of which seem to be concerns with the other employees subject to PIPs or complaints of unprofessionalism.

In sum, the Court finds that Plaintiff has not introduced sufficient evidence from which a jury could conclude that the Defendants' purported reasons for not renewing Plaintiff's contract were in actuality a pretext for intentional race discrimination.  As such, Plaintiff has not met her burden at this step and the Court will grant Defendants' motion for summary judgment with respect to Count I.

2. Chapman's Breach of Contract Claim (Count IV)

Plaintiff contends that the Residency Agreement she signed with Inspira constitutes a contract.  Plaintiff further contends that an employer's right to terminate an employee at will is limited by statutes that proscribe retaliation.  Plaintiff also argues that any accusation of her own wrongdoings or violations of her contract are evidence Defendants' pretextual explanations for its treatment of her and do not defeat her breach of

26

contract claim.  Plaintiff also disputes Defendants' claims that Inspira is an academy and its residents are students.

Defendants argue that Plaintiff was an employee at will and therefore has no claim for breach of contract regarding her termination or the non-renewal of her contract.  Defendants also assert that this claim is duplicative of Plaintiff's now withdrawn NJLAD claim.  Defendants further contest Plaintiff's reliance on Inspira's Resident Manual or Resident Agreement, emphasizing both the overlap with Plaintiff's discrimination claim and Plaintiff's actions in violation of this manual. According to the Defendants, the Court should defer to Defendant Inspira's decision not to renew Plaintiff's contract because this decision was an academic judgment and medical residents are students.

A breach of contract claim has four elements: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations.  Gordon v. United Continental Holding Inc., 73 F.Supp.3d 471, 478 (D.N.J. 2014) (citing Frederic v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007)).

The parties do not dispute that the Resident Agreement Plaintiff signed in March 2015 constitutes a contract between the parties.  Defendants maintain that they did not breach this

contract, but rather that Plaintiff breached the contract by failing to adhere to state federal and local laws.  Defendants do not speak to damages flowing from the alleged breach in their motion for summary judgment.

The Court notes that Defendants argue both that Plaintiff is an at-will employee and that Plaintiff is a student in an academic program.  Defendants argue that because of this dual status as an at-will employee and student, Plaintiff could be discharged for any reason and that Courts must defer to Defendant Inspira's decision-making process.  Though Defendants cite cases that speak to the subject of judicial deference to academic institutions and their administrative decisions such as Beukas v. Board of Trustees of Farleigh Dickinson University, 255 N.J. Super. 522 (N.J. 1992) (discussing dental student's challenge of a private university's decision to close its dental school) and Napolitano v. Princeton University Trustees, 186 N.J. Super. 548 (N.J. App.Div. 1982) (discussing a student's challenge of the trustee's decision to withhold her degree for one year for academic fraud), the Court declines to extend this reasoning to Inspira's residency program at this stage.[6]

---

[6] While it is true that participants in Inspira's family medicine residency program attend lectures and receive grades, they also work full time, a factor the Supreme Court considered in deciding whether medical residents were classed as students or employees for tax purposes in Mayo Foundation for Medical Educ. & Research v. U.S., 562 U.S. 44 (2011).

The Court also recognizes that Defendants have characterized Plaintiff's claim as asserting that Defendant Inspira breached its contract when it decided not to renew Plaintiff's residency agreement for another year.  In fact, Plaintiff claims that Defendant Inspira breached its contract with her by failing to provide a complaint procedure consistent with the terms of her contract and not allowing her to complete her training.

Characterizing the claim as Plaintiff does, the Court finds that there is a genuine dispute of material fact regarding whether Defendants violated its contract with Plaintiff and whether Plaintiff performed her own contractual obligations. Whether the Resident Agreement obligated Defendants to provide a different or more robust complaint procedure and, if so, whether Defendants failed to do so remains a genuine dispute of material fact.  Plaintiff's own actions in compliance with local, state, and federal laws are also subject to a genuine dispute of material fact.

As such, the Court will deny Defendants' motion for summary judgment as it relates to this count.

3. Chapman's Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Count V)

Plaintiff contends that Defendant Inspira engaged in bad faith in its contractual dealing and failed to carry out its

29

contractual obligations to Plaintiff.  Plaintiff argues this claim should go to trial because a jury could reasonably find that Defendant Inspira made it impossible for Plaintiff to enjoy the fruits of her employment contract.  Plaintiff further contends that her contract includes the "right to be free to present her concerns and grievances for a hearing without fear of reprisal."  Plaintiff asserts that when she exercised this right, she was terminated and denied the opportunity to get full credit for the year.  Plaintiff also contends that Defendants acted in bad faith when they forced her to take a leave of absence for an offhand comment about self-harm.  Plaintiff points to the actions of Defendants Zucconi and Geria as further evidence of bad faith.

Defendants argue that Plaintiff cannot recover on both an express contract provision and on the implied covenant of good faith and fair dealing because the two breaches arose from the identical alleged conduct.  Defendants also argue that the renewal of Plaintiff's contract was optional, and therefore cannot form the basis of a claim for breaching the implied covenant of good faith and fair dealing.

Under New Jersey Law, every contract contains an implied covenant of good faith and fair dealing.  Luongo v. Village Supermarket, Inc., 261 F.Supp.3d 520, 531 (D.N.J. 2017) (citing Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396 (N.J.

1997)).  However, "a breach of the implied covenant of good
faith and fair dealing differs from a literal violation of the
contract."  Spellman v. Express Dynamics, LLC, 150 F.Supp.3d
378, 389 (D.N.J. 2015) (citing Wade v. Kessler Inst., 172 N.J.
327, 340 (N.J. 2002)).  A party, even if it does not breach an
express term of a contract, can act in bad faith to interfere
with the other party's ability to enjoy the fruits of the
contract.  Luongo, 261 F.Supp.3d at 531 (citing Wilson v.
Amerada Hess Corp., 168 N.J. 236 244 (N.J. 2001)).  When a party
has breached a specific term of a contract, that party cannot be
found separately liable for breaching the implied covenant of
good faith and fair dealing "when the two asserted breaches
basically rest on the same conduct." Id.

     To recover for a breach of the implied covenant, a
plaintiff must prove that: (1) a contract exists between the
parties; (2) the plaintiff performed under the terms of the
contract; (3) the defendant acted in bad faith with the purpose
of depriving the plaintiff of rights or benefits under the
contract; and (4) the defendant's actions caused the plaintiff
to sustain damages.  Luongo, 261 F.Supp.3d at 531-32 (citing TBI
Unlimited, LLC v. Clear Cut Lawn Decisions, LLC, No. 12-3355,
2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014)).

     The Court finds that this claim is duplicative of
Plaintiff's breach of contract claim.  Plaintiff cannot rely on

evidence that Defendants did not comply with the grievance
procedure described in the Resident Agreement as evidence of
both a breach of contract and as evidence of a breach of the
implied covenant of good faith and fair dealing.  Likewise,
Plaintiff's assertions that Defendants Zucconi and Geria's
action, or lack thereof, in regards to Plaintiff's complaints
about her co-residents constitute "subterfuges and evasions" in
the performance of the contract cannot be the basis of both
Count IV and Count V.  These two asserted breaches rest on
basically the same conduct and therefore cannot both continue
forward.  Furthermore, Plaintiff has not introduced sufficient
evidence to create a genuine dispute of material fact regarding
whether Defendant Zucconi and Geria's purpose was to deprive
Plaintiff of rights or benefits under the Resident Agreement.
The Court will grant Defendants' motion for summary judgment
with respect to this count.

   4. Chapman's Tortious Interference Claim (Count VI)

      Plaintiff alleges that Defendants Zucconi and Geria
interfered with her contract with Inspira through their
"deliberate dismantlement of Plaintiff's ability to adequately
complete her internship requirements and continue the normal
course of a residency." ECF No. 1, at ¶ 94.  Plaintiff points to
Defendant Zucconi and Geria's decision not to let her make up
her rotation time, dismissal of her complaints about her

colleagues, and discontinuation and nonrenewal of her residency contract as being motivated by biases rather than business interests.  Plaintiff contends that these actions were motivated by Defendants Zucconi and Geria's personal vendetta against Plaintiff for opposing harassment by Aderholdt.

Defendants counter that Plaintiff does not refer to any specific contract that could be the basis of a tortious interference claim.  Defendants further state that Plaintiff cannot prove that Defendant Geria or Zucconi acted with malice. Defendants highlight that Geria and Zucconi have sole discretion to decide if Plaintiff's agreement would be renewed for a second year of residency.  Defendants argue that it was well within Defendants Zucconi and Geria's discretion to determine that renewing Plaintiff's contract did not further Inspira's objectives.  Lastly, Defendants assert that Defendants Zucconi and Geria cannot be liable for tortious interference because they are co-employees of a party to an employment relationship and acting within the scope of their employment.

Under New Jersey law, tortious interference with a contract has four elements: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference. DiGiorgio Corp. v. Mendez & Co., Inc., 320 F.Supp.2d 552, 558

(D.N.J. 2002) (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 729, 751-52 (1989)).  "Interference is intentional when 'the actor desires to bring it about or if he knows that the interreference is certain or substantially certain to occur as a result of his action.'"  Cargill Global Trading v. Applied Dev. Co., 706 F.Supp.2d 563, 575 (D.N.J. 2010) (quoting Dello Russo v. Nagel, 358 N.J. Super. 254, 268 (N.J. Super.App.Div. 2003)).  In this context, malice "does not require ill will toward the plaintiff, but rather 'is defined to mean that the harm was inflicted intentionally and without justification or excuse."  Matrix Essentials, Inc. v. Cosmetic Gallery, Inc., 870 F.Supp.1237, 1248 (D.N.J. 1994) (quoting Printing Mart-Morristown, 116 N.J. at 751).  Put differently, to demonstrate malice, a plaintiff must "show that the defendant's conduct was '"transgressive of generally accepted standards of morality"; that is, a violation of standards of "socially acceptable conduct."'"  Id. (quoting Baldasarre v. Butler, 254 N.J. Super. 502, 526 (N.J. App.Div. 1992) (quoting Leslie Blau Co. v. Alfieri, 157 N.J. Super. 172, 189 (N.J. App.Div. 1978))).

The Court finds that there is no genuine dispute of material fact with regard to this count.  Plaintiff cannot show that Defendants Zucconi and Geria acted intentionally and with malice.  Though Plaintiff did not seem to have good professional or personal relationships with Defendants Zucconi or Geria

during her employment at Inspira, none of the evidence Plaintiff introduced shows that the Defendants' conduct was transgressive of generally accepted standards of morality or outside of socially acceptable conduct.  Furthermore, any harm that Defendants Zucconi and Geria inflicted by not recommending that Plaintiff's contract be renewed was justified or with excuse, given the issues raised by Plaintiff's conduct and performance as a resident.  The Court will grant Defendants' motion for summary judgment with respect to this count.

    D. Motion to Seal

    In this District, Local Civil Rule 5.3 governs motions to seal or otherwise restrict public access to materials filed with the Court and judicial proceedings themselves.  To place a docket entry under seal, the Rule requires that the motion to seal must be publicly filed and "shall describe (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available."  L.Civ.R. 5.3(c)(2).  The party moving to seal must submit a proposed order that contains proposed findings of fact and conclusions of law.  L.Civ.R. 5.3(c)(3).

In this case, the parties filed a joint motion seeking to redact certain portions of documents and seal the entirety of one document.  These documents contain certain personally identifiable information such as Plaintiff's date of birth and her personal identification numbers with several academic and professional organizations, and Plaintiff's psychiatric evaluation.  The information in the parties' submission satisfies the standards set forth in Local Rule 5(c)(3) and there is no less restrictive alternative to sealing the confidential information.

The Court will grant the joint motion to seal.

CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Defendants' motion for summary judgment.  The Court will also grant the parties' joint motion to seal.

An appropriate Order will be entered.

Date: September 25, 2020          s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.