UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AUDREY CHAPMAN, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO: 1:17-cv-03145-CPO-MJS |
| | : | |
| v. | : | |
| | : | |
| INSPIRA HEALTH NETWORK, INC., | : | |
| MICHAEL GERIA and | : | |
| NICOLE ZUCCONI | : | |
| | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF MOTION IN LIMINE OF
DEFENDANT, INSPIRA HEALTH NETWORK**

**I.     MATTER BEFORE THE COURT**

Defendant, Inspira Health Network, Inc., by and through its attorney, Thomas Paschos & Associates, P.C., hereby submits the following Brief in support of its Motion In Limine (1)  to bar the expert report and testimony of Paul M. Gazaleh, CPA/ABV, (2) to limit Plaintiff's alleged damages on her breach of contract count to exclude consequential and punitive damages as against Defendant, Inspira Health Network, Inc., and (3) to substantially limit Plaintiff's ability to recover any potential damages owed to Plaintiff due to Plaintiff's failure to mitigate her own damages.

**II.     QUESTIONS TO BE DETERMINED**

1. Should the Expert Report and testimony of Paul M. Gazaleh, CPA/ABV be barred?

   **Suggested answer in the affirmative.**

2. Should Plaintiff's alleged damages on her breach of contract count be limited to exclude consequential damages as against Defendant, Inspira Health Network, Inc.?

   **Suggested answer in the affirmative.**

3. Should Plaintiff's alleged damages on her breach of contract count be limited to exclude

punitive damages as against Defendant, Inspira Health Network, Inc.?

>    **Suggested answer in the affirmative.**

4. Should Plaintiff be barred or limited from recovering any damages due to Plaintiff's Failure to mitigate her own damages?

>    **Suggested answer in the affirmative.**

## III.   STATEMENT OF FACTS

### A.   Procedural History

On May 5, 2017, Plaintiff Audrey Chapman ("Plaintiff") filed her Complaint in the United States District Court for the District of New Jersey Camden Vicinage, naming as Defendants Inspira Health Network, Inc., Michael Geria, and Nicole Zucconi.  Plaintiff's Complaint set forth the following: (Count I as against all Defendants, Section 1981: Race Discrimination in Employment, (Count II) as against all Defendants, NJLAD: Race Discrimination in Employment, (Count III) as against all Defendants, CEPA: Whistleblower Retaliation, (Count IV) as against Defendant Inspira Health Network, Inc., Breach of Contract, (Count V) as against Defendant Inspira Health Network, Inc., Breach of Implied Covenant of Good Faith and Fair Dealing, and (Count VI) as against Defendants Geria and Zucconi, Tortious Interference.

On August 30, 2017 this Honorable Court granted defendants' Motion for Leave to file an Answer or otherwise plead by September 29, 2017.  Defendants' Answer with Affirmative Defenses was filed on September 27, 2017.  Defendants filed a Motion for Summary Judgment on September 30, 2019 to dismiss the Complaint of the Plaintiff with prejudice.  On November 27, 2019, Plaintiff withdrew Counts II and III, as expressed in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.  In his September 25, 2020 Opinion, Judge Hillman

Dismissed Counts I, V, and VI.  The only remaining count is Plaintiff's Breach of Contract Count (Count IV) against Defendant Inspira Health Network, Inc.

According to Judge Hillman, the genuine issues of material fact regarding Plaintiff's remaining Breach of Contract claim against Defendant Inspira Health Network, Inc. are summed up in his September 25, 2020 Opinion as follows:

> Characterizing the claim as Plaintiff does, the Court finds that there is a genuine dispute of material fact regarding whether Defendants violated its contract with Plaintiff and whether Plaintiff performed her own contractual obligations. Whether the Resident Agreement obligated Defendants to provide a different or more robust complaint procedure and, if so, whether Defendants failed to do so remains a genuine dispute of material fact. Plaintiff's own actions in compliance with local, state, and federal laws are also subject to a genuine dispute of material fact.

> *See* Judge Hillman's September 25, 2020 Opinion, pg. 29.

Defendant Inspira Health Network, Inc., ("Inspira Health Network" or "Inspira" or "Defendant IHN") now moves for an Order (1) to bar the expert report and testimony of Paul M. Gazaleh, CPA/ABV, (2) to limit Plaintiff's alleged damages on her breach of contract count to exclude consequential and punitive damages as against Defendant, Inspira Health Network, Inc., and (3) to substantially limit Plaintiff's ability to recover any potential damages owed to Plaintiff due to Plaintiff's failure to mitigate her own damages.

**B.  Factual History**

Plaintiff, Audrey Chapman, started her first year of residency at Inspira Health Network on or about July 1, 2015.  Shortly thereafter, on or about July 24, 2015, she started recording every conversation or most conversations that she had with personnel at Inspira, including conversations with Ralph Vicente, the HR business partner, Michael Geria, and Nicole Zucconi.  In total, 89 conversations have been provided and produced by plaintiff.  On October 16, 2015 a meeting took place between plaintiff and Dr. Geria, Dr. Hargrave, Ralph Vicente, and Deborah Mulford.  During

this meeting, for the first time, plaintiff advised Dr. Geria and everyone present that she was not happy with the family residency program, and that all along she wanted to do her residency in the OB/GYN field.

During the entire time that Audrey Chapman was a resident, she showed signs of unprofessional behavior. This unprofessional behavior ultimately led to her being placed being on a Professional Improvement Plan (PIP) on January 27, 2016. Ultimately, she was advised on May 5, 2016 that due to her persistent unprofessional behavior and failure to comply with the performance improvement plan that Inspira would not renew her family medicine residency contract of her second family residency year at Inspira. Notably, nothing prevented Plaintiff from obtaining another residency at another medical institution.

Plaintiff's only remaining claim is a breach of contract claim against Inspira Health Network. As indicated in greater detail below, the expert report and testimony of Paul M. Gazaleh, CPA/ABV should be barred where said report is based on unforeseeable consequential damages and also failed to provide alternate theories based on a mere breach of contract action. Moreover, Plaintiff's alleged damages on her breach of contract count should be limited to exclude consequential and punitive damages as against Defendant, Inspira Health Network, Inc., where Plaintiff is not entitled to same. Finally, Plaintiff's ability to recover any potential damages owed to Plaintiff should be substantially limited due to Plaintiff's failure to mitigate her own damages.

## IV.   LEGAL ARGUMENT

"…[A] motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *See Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)(citing *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238,

260 (3d Cir. 1983), *rev'd. on other grounds sub nom.); Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1985.)

Moreover,

> An "in limine ruling on evidence issues is a procedure which should, in the trial court's discretion, be used in appropriate cases." In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). One such appropriate case is where the court can shield the jury from unfairly prejudicial or irrelevant evidence. See United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). The in limine motion then fosters efficiency for the court and for counsel by preventing needless argument at trial. New Jersey Civil Procedure § 16-2:2 (citing Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1988)). However, the ruling should not be made prematurely if the context of trial would provide clarity. Japanese Elec., 723 F.2d at 260.

> *See Ebenhoech v. Koppers Indus.*, 239 F. Supp. 2d 455, 461 (D.N.J. 2002.)

Plaintiff claims that:

> Defendant IHN's breach of the Agreement by its refusal to provide promised conditions during the internship, failure to extend Plaintiff's training because of her leave of absence so that she could complete her first year of residency, its unlawfully and improperly motivated dismissal of Dr. Chapman and nonrenewal of her contract, has devastated her medical career and caused her substantial damage and wage loss by depriving her of the ability to currently works as a physician (which requires completion of a resident's internship or first year of residency).

> *See* Plaintiff's Complaint, ¶ 89.

However, to the extent Plaintiff seeks consequential and/or punitive damages, Plaintiff is not entitled to same, and her alleged damages should thus be limited to exclude said damages. The expert report and testimony of Paul M. Gazaleh, CPA/ABV should also be barred where said report is based on unforeseeable consequential damages and failed to provide alternate theories based on a mere breach of contract action. Moreover, Plaintiff has failed to mitigate her damages, and thus any recoverable damages owed to Plaintiff should be substantially limited due to such failure to mitigate.

**Evidence of Consequential Damages Must be Barred.**

As to consequential damages,

> New Jersey has adopted the traditional rule of *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854), that consequential damages are available for those delays that may "fairly and reasonably be supposed to have been in the contemplation of the parties to the contract at the time it was made, as the probable result of the breach." *Sandvik, Inc. v. Statewide Sec. Sys, Div. of Statewide Guard Servs, Inc*., 192 N.J. Super. 272, 469 A.2d 955, 958 (N.J. Super. Ct. App. Div. 1983).

> *See Jaasma v. Shell Oil Co.*, 412 F.3d 501, 515 n.8 (3d Cir. 2005.)

Moreover,

> Consequential damages are only recoverable where they "are reasonably foreseeable at the time the contract was entered into." *T.M. Long Co., Inc. v. Jarrett*, 165 *N.J.Super.* 117, 119, 397 *A.*2d 735 (Cty.D.Ct.1979). *See also Donovan v. Bachstadt*, 91 *N.J.* 434, 444, 453 *A.*2d 160 (1982) (breaching party "is not chargeable for loss that he did not have reason to foresee as a probable result of the breach when the contract was made"). "[T]o impose liability the defendant must have had reason to foresee the injury at the time the contract was made, not at the time of the breach." *Coyle v. Englander's*, 199 *N.J.Super.* 212, 220, 488 *A.*2d 1083 (App.Div.1985) (citing 5 *Corbin, Contracts* (§ 1008, at 73-74 (1964)).

> *See George H. Swatek, Inc. v. N. Star Graphics, Inc.*, 246 N.J. Super. 281, 285 (App. Div. 1991.)

Plaintiff has provided an expert opinion by Paul M. Gazaleh, CPA/ABV. Mr. Gazaleh's report provides "calculations regarding the Economic Loss to Dr. Audrey Chapman…" (Attached hereto as Exhibit A is a true and correct copy of the Gazaleh Report)(*See* Exhibit A, pg. 9.) Mr. Gazaleh used "the expected working life of Dr. Audrey Chapman" as the "period for which the earnings loss [was] computed". *See* Exhibit A, pg. 2. Further, Mr. Gazaleh indicated that "[f]or purposes of this analysis, her earnings capacity since her non-renewal will be estimated based on the minimum salary of $45,193 for a teacher in Alabama with a Master's degree and less than 3 years of experience." *See* Exhibit A, pg. 5. Mr. Gazaleh ultimately calculated the following as to the Economic Loss to Dr. Audrey Chapman:

----------------------------------------------------------------------

| | |
|---|---|
| Total Past Loss Before Income Taxes | $262,500 |
| Total Future Loss Before Income Taxes | <u>$5,014,302</u> |
| Net Loss Before Income Taxes | **<u>$5,276,802</u>** |

*See* Exhibit A, pp. 1, 9.

----------------------------------------------------------------------

The above calculations by plaintiff's expert are based on consequential damages, which are not recoverable in a breach of contract action unless they are "are reasonably foreseeable at the time the contract was entered into". Defendant IHN could not reasonably foresee that Plaintiff would not get accepted into another residency program at the time Plaintiff and Defendant entered into the residency contract. Furthermore, following plaintiff's one year residency at Inspira, depositions from Defendant IHN's personnel indicate the efforts taken by said personnel to aid Plaintiff to find a new residency. For example, Dr. Hargrave, the director of the family medicine residency program at Inspira, provided letters of recommendation to Dr. Chapman to assist her in obtaining another residency position. The following are some excerpts from the deposition of Dr. Hargrave:

> Q.    After Dr. Chapman was not renewed, did any -- have you ever been contacted by any other residency programs asking for some kind of recommendation regarding Dr. Chapman?
>
> A.    I believe that I did have one that asked for information.
>
> Q.    Okay. And was that in writing or was that an actual phone conversation or –
>
> A.    I believe in writing, but I don't remember specifics at this point.
>
> Q.    Okay. And do you remember how you responded to that?
>
> A.    I believe that I sent a letter of recommendation.
>
> Q.    To Dr. Chapman or to the facility?

A.     I believe to the facility.

Q.     Okay.

A.     I believe I gave Dr. Chapman copies of the letter also.

*See* Dr. Hargrave Deposition of 5/14/2019 Transcript p. 131-132.

- - - - -

Q.     How many letters of recommendation did you provide for Dr. Chapman?

A.     I believe two letters of recommendation.  And then I did a revision of those at a later date, to update the date on those.

Q.     Why did you provide a letter of recommendation for Dr. Chapman even after you participated in a decision not to renew her contract with Inspira for her second year of residency?

A.     I was hoping that she would be able to get a position at another program and still have been able to continue forward with her training.

*See* Dr. Hargrave Deposition of 5/14/2019 Transcript p. 137.

- - - - -

Q.     Having known of all of Dr. Chapman's issues at Inspira, again, why did you write two letters of recommendations for her?

A.     Again, my hope was that, you know, she would be able to obtain a position where she could continue her training.  There were obvious issues here.  And it became apparent, you know, that she definitely was not going to be able to continue at our program and expressed that she really wanted to go into women's healthcare.  But I had a hope that maybe with a clean start somewhere at a different place and maybe in a different environment, that, you know, she would be able to continue her training and be a doctor and be able to have a fulfilling career.

        So I wrote those based on, you know, the information that was there.  I didn't state any untruths, you know, in those. And I had hoped that she might be able to obtain a position somewhere else.

*See* Dr. Hargrave Deposition of 5/14/2019 Transcript p. 172-173.

Dr. Geria**,** who was the Director of Medical Education at Inspira, had a meeting with Dr.

Chapman as early as October 16, 2015 in order to help her improve as a resident.  It was during

that meeting that he first was told by Dr. Chapman that she did not want to be in the family residency program, but always wanted to be in an OB/GYN residency program.  Dr. Geria did offer to help her find another residency program, especially in an OB/GYN residency program. That was the first time that he became aware that Dr. Chapman was frustrated with the family medicine program. *See* Dr. Geria Deposition of 11/2/2018 Transcript p. 94, 194-196, 201-204. The following is a portion of Dr. Geria's deposition transcript:

> Q.    And you also had another meeting with her on November 5, 2015.  This is -- this is recording Number 17.  And in that meeting you told her that you're willing to write letters of recommendations for her to get into an OB/GYN program.  Do you recall you saying?
>
> A.    I recall that.
>
> Q.    But you also told her then -- do you recall saying that you have a place here as long as you're progressing here?  Do you recall saying that?
>
> MR. SCHEFFER:    Objection.
>
> THE WITNESS:    I recall saying that.  I wanted Dr. Chapman to be successful. She was clearly unhappy with family medicine.  I was willing to help try to get an OB/GYN residency program.  I did, in my opinion, with the best -- I made the best effort to help here.  There is a certain point where she had to apply to a program, which never happened, and I was willing to help her to get into a program.  But I was totally confused as to why she never applied.

*See* Dr. Geria Deposition of 11/2/2018 Transcript p. 201-202.

Accordingly, Defendant IHN's personnel did their part, and attempted to assist Plaintiff in finding and obtaining another residency position.  As set forth in Defense experts' reports, "If Dr. Chapman lost anything while at, or due to, "Inspira Health," it was not her earning capacity for becoming a physician" (*See* Paré Report, pg. 16), and "…Dr. Chapman's residency contract was non-renewed for failure to meet the requirements of her PIP and appears to be unrelated to any alleged wrongful discharge, discrimination or breach of contract. Consistent with Mr. Pare's

opinion that Dr. Chapman has not lost any earning capacity as a result of the actions of Inspira." *See* Willoughby Report, pg. 9.

However, Mr. Gazaleh's report is based on consequential damages.  Consequential damages need be foreseeable. Further, Plaintiff has substantial education and training through her experience with Defendant IHN that she can use to pursue a career in the medical field, if she so chooses. A Completion Letter dated September 23, 2019, signed by Dr. Geria and Dr. Zucconi, verified that Plaintiff "successfully completed all requirements of an American Osteopathic Association approved OGME-1 Year and Inspira Medical Center Vineland…" for the program dates of "July 1, 2015 through June 30, 2016. (Attached hereto as Exhibit B is a true and correct copy of Plaintiff's Completion Letter.) Of note from Mr. Paré's report, "[a] standard of a three-year residency completion is required in all 50 states to be licensed to practice as a physician; however, in the majority (some three dozen) of them, a license- with certain considerations- may also be obtained after one year of residency." (*See* Paré Report, pg. 9) (citing https://www.fsmb.org/step-3/state-licensure       AND       https://www.ama-assn.org/sites/ama-assn.org/files/corp/media-browser/public/img/licensure-comparison-imgs-usmgs_1.pdf.)     This demonstrates that Plaintiff can currently work in 36 out of the 50 states. (Attached hereto as Exhibit C is Information on States that Allow Practice of Medicine for PGY-1.

Because Mr. Gazaleh's expert report is based on consequential damages, and where the consequential damages calculated by Mr. Gazaleh were unforeseeable at the time Plaintiff and Defendant entered into the contract, Mr. Gazaleh's expert report should be barred in whole or in part, to the extent it seeks recovery for consequential damages, and Plaintiff's alleged damages on her breach of contract count should be limited to exclude consequential damages.

**Mr. Gazaleh's Report & Testimony Must be Barred**

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." *See Townsend v. Pierre*, 221 N.J. 36, 52 (2015)(citing *State v. Berry*, 140 N.J. 280, 293, 658 A.2d 702 (1995).)

Moreover,

> N.J.R.E. 703 addresses the foundation for expert testimony. It mandates that expert opinion be grounded in "'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'" Polzo, supra, 196 N.J. at 583, 960 A.2d 375 (quoting State v. Townsend, 186 N.J. 473, 494, 897 A.2d 316 (2006)). The net opinion rule is a "corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Ibid. [(footnote omitted.)] The rule requires that an expert "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144, 77 A.3d 1161 (2013) (quoting Pomerantz Paper Corp., supra, 207 N.J. at 372, 25 A.3d 221); see also Buckelew, supra, 87 N.J. at 524, 435 A.2d 1150 (explaining that "an expert's bare conclusion[], unsupported by factual evidence, is inadmissible").

> *See Townsend v. Pierre*, 221 N.J. 36, 53-54 (2015).

The date of Mr. Gazaleh's report is June 30, 2019, and the date of the Calculation of Loss is indicated as July 26, 2019. (*See* Exhibit A.) Defendants filed a Motion for Summary Judgment on September 30, 2019 to dismiss the Complaint of the Plaintiff with prejudice. On November 27, 2019, Plaintiff withdrew Counts II and III, as expressed in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.  In his September 25, 2020 Opinion, Judge Hillman Dismissed Counts I, V, and VI.  The only remaining count is Plaintiff's Breach of Contract Count (Count IV) against Defendant Inspira Health Network, Inc. Accordingly, at the time Mr. Gazaleh prepared his report in this matter, it was a very different case. That is, there was a multi-count Complaint against various Defendants at that time, wherein Mr. Gazaleh assumed, pursuant to the allegations in the Complaint, counts under Section 1981 and NJLAD race

discrimination in employment, CEPA whistleblower retaliation, breach of contract, breach of implied covenant of good faith and fair dealing, and tortious interference. This would appear to have affected Mr. Gazaleh's calculation of damages based on the alleged injuries, as Mr. Gazaleh's report was drafted with the understanding that he was looking at all the counts of the Complaint. However, After Judge Hillman's September 25, 2020 Opinion, the majority of the claims averred in Plaintiff's Complaint were no longer part of this cause of action. Rather, this case was left as a mere breach of contract case against the sole remaining Defendant, Inspira. Mr. Gazaleh never provided alternate theories based on the possibility that all the counts of the Complaint wouldn't need to be taken into account.

Moreover, Mr. Gazaleh's report is drafted as though this were a personal injury case where an individual has injuries for twenty (20) years. That's not what we have here. This is solely a breach of contract case, and Mr. Gazaleh cannot speculate out twenty (20) years of damages like he was able to before. To do so would be prejudicial to Defendant Inspira.

Based on the foregoing, where Mr. Gazaleh's report is based on speculative consequential damages, Mr. Gazaleh's testimony and report should be barred.

**Punitive Damage Must be Barred.**

In terms of plaintiff's breach of contract count, punitive damages are not generally recoverable for the breach of a contract. *Sandler v. Lawn-A-Mat Chemical & Equipment Corp.,* 141 N.J. Super. 437, 449 (App. Div.) certif. denied, 71 N.J. 503 (1976). Punitive damages may only be recoverable in "exceptional circumstances dictated by the nature of the relationship between the parties or the duty imposed upon the wrongdoer..." *Sandler,* 141 N.J. Super. at 450-51. An employer-employee relationship is not an exceptional circumstance. *See Salovaara v. Eckert*, 1998 WL 34075425, *20 (N.J. Ch. Div.) (dismissing punitive damages for breach of

12

partnership agreement); *Bishop v. Inacom Inc.,* 1999 WL 1416919, *11 (D.N.J.) (dismissing punitive damages because employer-employee relationship is not exception to bar against punitive damages in contract action).

Moreover, "[t]o warrant a punitive damage award, there must be an intentional wrongdoing in the sense of an "evil-minded act"." *See McMahon v. Chryssikos*, 218 N.J. Super. 571, 573 (Super. Ct. 1986.)  "Alternatively, punitive damages may be warranted where the defendant's conduct arises from an act accompanied by a willful and wanton disregard of the rights of others." *See McMahon v. Chryssikos*, 218 N.J. Super. 571, 573 (Super. Ct. 1986)(citing *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 49 (1984)); *DiGiovanni v. Pessel*, 55 *N.J.* 188, 190 (1970); *Berg v. Reaction Motors Div.*, 37 *N.J.* 396, 414 (1962).  "But this alternative basis for punitive damages must be something more than mere commission of a tort." *See McMahon v. Chryssikos*, 218 N.J. Super. 571, 573 (Super. Ct. 1986.)  "There must be such a conscious and deliberate disregard for the safety of others that the defendant's conduct may be called willful or wanton." *See McMahon v. Chryssikos*, 218 N.J. Super. 571, 573 (Super. Ct. 1986)(citing *Nappe*, 97 *N.J.* at 50; *DiGiovanni*, 55 *N.J.* at 190.). "Punitive damages have been characterized as "intentionally inflicting harm or acting in such a gross, wanton way, such a terrible way, so recklessly in disregard of what might happen to someone."" *See McMahon v. Chryssikos*, 218 N.J. Super. 571, 573 (Super. Ct. 1986)(citing *Fischer v. Johns-Manville*, 103 *N.J.* 643, 671 (1986)). *See also Enright v. Lubow*, 202 N.J. Super. 58, 76 (App.Div.1985).

The only remaining count in this action is Plaintiff's Breach of Contract Count (Count IV) against Defendant Inspira Health Network, Inc.  Plaintiff is not entitled to recover punitive damages on this remaining breach of contract count, and neither does the record support a claim

for punitive damages. None of Plaintiff's allegations against moving Defendant arise to the level of willful wrongdoing necessary to support an award for punitive damages.

**Plaintiff has Failed to Mitigate her Alleged Damages.**

Per the Restatement Second of Contracts, § 350:

§ 350 Avoidability as a Limitation on Damages

> (1) Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation.

> (2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid loss.

*See* Restat 2d of Contracts, § 350.

Moreover, "[t]raditional concepts of contract and tort law require one wronged by the action of another to mitigate damages." *See Harvard v. Bushberg Bros., Inc.*, 137 N.J. Super. 537, 542 (App. Div. 1975)(citing *Frank Stamato & Co. v. Lodi*, 4 *N.J.* 14, 21 (1950)); *Clay v. Jersey City*, 74 *N.J. Super.* 490 (Ch. Div. 1962), aff'd 84 *N.J. Super.* 9 (App. Div. 1964); *McGraw v. Johnson*, 42 *N.J. Super.* 267 (App. Div. 1956).

"Mitigation of damages is a doctrine applicable to breach of contract cases provided the factual complex permits its application and defendant sustains the burden of proof cast upon him as to actual or potential mitigation and the amount thereof." *See Sandler v. Lawn-A-Mat Chem. & Equip. Corp.*, 141 N.J. Super. 437, 455 (App. Div. 1976)(citing *Roselle v. La Fera Contracting Co.*, 18 *N.J. Super.* 19, 28 (Ch. Div. 1952)); *McCormick, op. cit.* § 33 at 130. "The doctrine is particularly applicable to an employment contract wherein the discharge of a full-time employee frees him to earn moneys for his personal services." *See Sandler v. Lawn-A-Mat Chem. & Equip. Corp.*, 141 N.J. Super. 437, 455 (App. Div. 1976.) "Under such circumstances his subsequent

14

earnings during the period of the balance of the contract can be considered in reduction of the claimed damages." *Id.*

Plaintiff has failed to mitigate her damages here. First, Plaintiff has extensive education and training through her residency with Defendant IHN that she can otherwise use to pursue a career in the medical field, if she so chooses. Secondly, Plaintiff is still capable of gaining another residency and completing her training. Finally, and most notably, Plaintiff has a present ability to work as a physician in 36 out of the 50 states. (*See* Exhibit C.) Should Plaintiff be able to recover for any damages at all, such damages should be substantially limited by her failure to mitigate her own damages.

**WHEREFORE**, for the reasons above, Plaintiff cannot prove entitlement to consequential damages on her claim where her alleged damages were not foreseeable at the time the contract between Plaintiff and Defendant was entered into, and Plaintiff is otherwise precluded from recovering punitive damages on her claim. Plaintiff's expert report also failed to provide alternate theories based on a mere breach of contract action, and Plaintiff has failed to mitigate her damages. Accordingly, it is respectfully requested that this Honorable Court grant the within Motion in Limine on behalf of the Defendant, Inspira Health Network, Inc., (i) barring the expert report and testimony of Paul M. Gazaleh, CPA/ABV in whole or in part, (ii) limiting Plaintiff's alleged damages on her breach of contract count to exclude consequential damages, (iii) limiting Plaintiff's alleged damages on her breach of contract count to exclude punitive damages, and (iv) substantially limiting Plaintiff's ability to recover any potential damages owed to Plaintiff due to Plaintiff's failure to mitigate her own damages.

## V.      <u>CONCLUSION</u>

For the foresaid reasons, it is respectfully requested that the within Motion in Limine be granted, and an Order entered on behalf of Defendant, Inspira Health Network, Inc., barring the expert report and testimony of Paul M. Gazaleh, CPA/ABV in whole or in part, limiting Plaintiff's alleged damages on her breach of contract count to exclude consequential and punitive damages as against Defendant, Inspira Health Network, Inc., and substantially limiting Plaintiff's ability to recover any potential damages owed to Plaintiff due to Plaintiff's failure to mitigate her own damages.

Respectfully submitted,

**THOMAS PASCHOS & ASSOCIATES, P.C.**

By:  *Thomas Paschos*_____
    Thomas Paschos, Esquire
    30 North Haddon Avenue, Suite 200
    Haddonfield, NJ  08033; (856) 354-1900
    E-mail:  tpaschos@paschoslaw.com
    Attorney for Defendant, Inspira Health
    Network, Inc.