UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AUDREY CHAPMAN, | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO: 1:17-cv-03145-CPO-MJS |
| | : |
| v. | : |
| | : |
| INSPIRA HEALTH NETWORK, INC., | : |
| MICHAEL GERIA and | : |
| NICOLE ZUCCONI | : |
| | : |
| Defendants. | : |

**TRIAL BRIEF OF DEFENDANT, INSPIRA HEALTH NETWORK, INC.**

**I.   SUMMARY OF CLAIMS OR DEFENSES TO BE PRESENTED**

**a.   Nature of Action**

This is a breach of contract action whereby Plaintiff, Audrey Chapman ("Plaintiff"), argues that Defendant, Inspira Health Network, Inc. ("Inspira") failed to fulfill its contractual obligations when it terminated Plaintiff's residency. (*See* #113 Joint Final Pretrial Order, Part I. A. Plaintiff's Summary of the Case.)

However, Inspira sets forth that Plaintiff was not provided with a second-year residency contract on July 1, 2016 due to her persistent unprofessional behavior and failure to comply with the performance improvement plan. Though she was given every possible opportunity to improve on her behavior throughout her first year of residency, she failed to do so. In fact, she created a hostile work environment for the nurses, residents and the attendees at Inspira. Other residents were afraid of being accused of retaliation by her, and they did not want to work with her. They were walking on egg shells every time they were near her. Plaintiff improperly accused nurses of not doing their job, and even after she was placed on a performance improvement plan, she continued to call Dr. Zucconi and Dr. Geria liars. None of the residents felt that they could give her constructive criticism because of fear of retaliation. Professional behavior is one of the core competencies that residents must meet as part of their education. The mere fact that Plaintiff started recording everyone as early as July 24, 2015 is a clear indication of her unprofessional behavior. Furthermore, the recordings themselves tremendously aide the defense and the position of Inspira, because they speak volumes of the unprofessional behavior and conduct of Plaintiff.

Further, Plaintiff on March 23, 2015 signed her resident agreement with Inspira Health Network. The agreement or contract was for a one (1) year term only to begin on July 1, 2015 and was "effective for a maximum period of twelve (12) months, expiring on June 30, 2016." This agreement specifically indicated per paragraph 1.2 that "this Agreement may be terminated by IHN (Inspira) at any point in time for the grounds

1

specified herein" and did not contractually obligate Inspira to offer another 2nd year contract to plaintiff. Plaintiff breached paragraph 2.2 of the agreement by failing to "adhere to all applicable state, federal and local laws, as well as the standards required to maintain accreditation by any relevant accrediting, certifying, or licensing organizations." The AOA (American Osteopathic Association)'s Basic Documents for Postdoctoral Training, under Section I (4.1) (a)(v) requires that "trainees… learn and demonstrate…basic osteopathic core competencies", including "professionalism in Osteopathic Medical Practice". This, the plaintiff failed to do. Her professionalism was extremely poor, and included falsely accusing other medical residents of bullying, refusing to work with senior residents, having tamper tantrums in front of other residents and physicians, not taking direction from senior residents, intimidating and threatening Dr. Nicole Zucconi, violating HIPAA, and worst of all, secretly recording over 89 conversations and meetings with other Inspira personnel and medical doctors. Incredibly, Plaintiff told Dr. Hargrave, the director of the family medicine program and other residents and doctors that she was recording everyone. This created an incredibly hostile environment for other residents, who were aware she was recording everyone. Her extremely unprofessionalism continued even after she was placed on a PIP on January 27, 2016, when in the presence of Dr. Jack Shields, who was then an Inspira board member, she accused Dr. Michael Geria and Dr. Nicole Zucconi of lying and calling them liars. Lastly, it should be pointed out that this was not the first instance of unprofessional behavior by Plaintiff. Subpoenaed records from the Mobile County Public School System, where she taught before going to medical school, show that she could not work in a hierarchical system even then, and was accused of being unprofessional. (See letter dated July 1, 2008 from D.H. Robinson-Walton, Principal of Calloway-Smith Middle School.)

Further, 6.0, Reappointment, of the Resident Agreement specially indicated:

> The duration of this Agreement is for a period of twelve (12) months. Reappointment and/or promotion to the next level of training is in the sole discretion of IHN and is expressly contingent upon several factors, including but not limited to, the following: recommendation by the Program Director, satisfactory completion of all training components, the availability of a position, satisfactory performance evaluations, full compliance with the terms of this Agreement, the continuation of IHN's and Program's accreditation, IHN's financial ability, and furtherance of IHN's objectives.

Inspira had the sole discretion as whether to offer Plaintiff an agreement for her second year of residency. Plaintiff, without any reasonable doubt, did not further Inspira's objectives, as she created a hostile work environment, refused to take instruction from senior residents, slept during lectures, threatened Dr. Nicole Zucconi, called Dr. Michael Geria and Dr. Nicole Zucconi liars, jeopardized patient safety, and tape recorded everyone at Inspira, including Human Resources personnel, other medical residents, Dr. Zucconi, Dr. Geria and countless others, and, remarkably, told everyone that she was recording them. Her actions were extremely unprofessional, did not further the objectives of Inspira and were a direct breach of the code of professionalism mandated by Inspira and the American Osteopathic Association.

### b. Statement of Facts and Procedural History

On May 5, 2017, Plaintiff, Audrey Chapman brought an action and the following counts in the United States District Court for the District of New Jersey, Camden Vicinage, against Defendants, Inspira Health Network, Inc., Michael Geria, and Nicole Zucconi: (Count I) As against all Defendants, Section 1981: Race Discrimination in Employment, (Count II) As against all Defendants, NJLAD: Race Discrimination in Employment, (Count III) As against all Defendants, CEPA: Whistleblower Retaliation, (Count IV) As to Defendant Inspira, Breach of Contract, (Count V) As to Defendant Inspira, Breach of Implied Covenant of Good Faith and Fair Dealing, and (Count VI) As to Defendants Geria and Zucconi, Tortious Interference. Defendants filed a Motion for Summary Judgment on September 30, 2019. On November 27, 2019, Plaintiff withdrew Counts II and III, as expressed in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. Moreover, in his September 25, 2020 Opinion, Judge Hillman Dismissed Counts I, V, and VI. The only remaining count is Plaintiff's Breach of Contract Count (Count IV) against Defendant Inspira.

Plaintiff, Audrey Chapman, started her first year of residency at Inspira Health Network on or about July 1, 2015. Shortly thereafter, on or about July 24, 2015, she started recording every conversation or most conversations that she had with personnel at Inspira Health Network, including conversations with Ralph Vicente, the HR business partner, Michael Geria, and Nicole Zucconi. In total, 89 conversations have been provided and produced by plaintiff. On October 16, 2015 a meeting took place between plaintiff and Dr. Geria, Dr. Hargrave, Ralph Vicente, and Deborah Mulford. During this meeting, for the first time, plaintiff advised Dr. Geria and everyone present that she was not happy with the family residency program, and that all along she wanted to do her residency in the OB/GYN field.

During the entire time that Audrey Chapman was a resident, she showed signs of unprofessional behavior. This unprofessional behavior ultimately led to her being placed on leave on or about December 21, 2015, for expressing suicidal thoughts in front of patients and staff, and also being placed on a professional improvement plan (PIP). Ultimately, she was advised on May 5, 2016 that due to her persistent unprofessional behavior and failure to comply with the performance improvement plan that Inspira Health Network would not renew her family medicine residency contract of July 1, 2016.

Plaintiff's only remaining claim is a breach of contract claim against Inspira. However, even this remaining allegation of breach of contract is without any merit. Academic institutions, such as Inspira Health Network, have wide academic discretion when it comes to retaining or discharging residents. Plaintiff was not offered a second year residency contract because of numerous unprofessional interactions that she had while a first-year resident.

## II. **LIABILITY**

Liability will be contested at trial.

### III.　LEGAL AND EVIDENTIARY ISSUES IN THE CASE

According to Judge Hillman, the genuine issues of material fact regarding Plaintiff's remaining Breach of Contract claim against Defendant Inspira are summed up in his September 25, 2020 Opinion as follows:

> Characterizing the claim as Plaintiff does, the Court finds that there is a genuine dispute of material fact regarding whether Defendants violated its contract with Plaintiff and whether Plaintiff performed her own contractual obligations. Whether the Resident Agreement obligated Defendants to provide a different or more robust complaint procedure and, if so, whether Defendants failed to do so remains a genuine dispute of material fact. Plaintiff's own actions in compliance with local, state, and federal laws are also subject to a genuine dispute of material fact.

*See* Judge Hillman's September 25, 2020 Opinion, pg. 29 (Document 71).

#### *Plaintiff Was An Employee At Will*

Plaintiff's breach of contract allegation is totally without merit. At the outset, Plaintiff was an employee at will and thus plaintiff has absolutely no claim for breach of contract. In New Jersey, as in most other states, absent an agreement to the contrary, the relationship between an employer and its employees is presumed to be for an indefinite period and terminable at the will of either party - that is, except in certain limited instances where an employee's termination is statutorily proscribed or contrary to a clear mandate of public policy. *Schlichtig v. Inacom Corp.*, 271 F.Supp. 2d 597 (D.N.J. 2003) (citing *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 397-398 (1994); *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 527 (1993)). Also, under New Jersey law, an employment relationship is terminable at-will unless an agreement exists between the employer and the employee that provides otherwise. *Erit v. Judge, Inc.*, 961 F. Supp. 774 (D.N.J. 1997). In the case herein, plaintiff was an employee at will at all times and therefore, she could be terminated at any time by her employer, for a good reason, a bad reason or no reason at all so long as it was not discriminatory.

#### *Plaintiff Breached Resident Manual, Resident Agreement, and AOA Standards*

Defendant, Inspira has not breached any provision of its Resident Manual or the resident contract signed on March 23, 2015. Rather, it is the plaintiff who has breached numerous provisions of the resident manual, the resident agreement and the AOA standards. For the sake of brevity, defendants point to the statement of facts above regarding plaintiff's breach of the resident manual.

The Court in *Cargill Global Trading v. Applied Dev. Co.*, 706 F.Supp. 2d 563, 579 (2010) held that a breach of contract claim has four elements. Plaintiff must prove that a) the parties entered into a contract that contained certain terms; b) the promisee satisfied the terms of the contract; c) the promisor failed to satisfy at least one term of the contract; and d) the breach caused the promisee to suffer a loss. Citing *Nat'l Util. Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 448 (D.N.J. 1999) (Walls, J.) (citing *5 Charles*

4

*Alan Wright & Arthur R. Miller*, Federal Practice & Procedure § 1235 at 269-271 (1990)). The party bringing the action has the burden of establishing each element in order to establish breach of contract. Citing *Nolan v. Control Data Corp.*, 243 N.J. Super. 420, 438, 579 A.2d 1252 (App. Div. 1990). Plaintiff, in her case, cannot prove each element above in order to prevail in her breach of contract claim, as she failed to satisfy the terms of the contract.

Plaintiff on March 23, 2015 signed her resident agreement with Inspira Health Network. The agreement or contract was for a one (1) year term only to begin on July 1, 2015 and was "effective for a maximum period of twelve (12) months, expiring on June 30, 2016." This agreement specifically indicated per paragraph 1.2 that "this Agreement may be terminated by IHN (Inspira) at any point in time for the grounds specified herein" and did not contractually obligate Inspira to offer another 2nd year contract to plaintiff. Plaintiff breached paragraph 2.2 of the agreement by failing to "adhere to all applicable state, federal and local laws, as well as the standards required to maintain accreditation by any relevant accrediting, certifying, or licensing organizations." The AOA (American Osteopathic Association)'s Basic Documents for Postdoctoral Training, under Section I (4.1) (a)(v) requires that "trainees… learn and demonstrate…basic osteopathic core competencies", including "professionalism in Osteopathic Medical Practice". This, the plaintiff failed to do. Her professionalism was extremely poor, and included falsely accusing other medical residents of bullying, refusing to work with senior residents, having tamper tantrums in front of other residents and physicians, not taking direction from senior residents, intimidating and threatening Dr. Nicole Zucconi, violating HIPAA, and worst of all, secretly recording over 89 conversations and meetings with other Inspira personnel and medical doctors. Incredibly, Plaintiff told Dr. Hargrave, the director of the family medicine program and other residents and doctors that she was recording everyone. This created an incredibly hostile environment for other residents, who were aware she was recording everyone. Her extremely unprofessionalism continued even after she was placed on a PIP on January 27, 2016, when in the presence of Dr. Jack Shields, who was then an Inspira board member, she accused Dr. Michael Geria and Dr. Nicole Zucconi of lying and calling them liars. Lastly, it should be pointed out that this was not the first instance of unprofessional behavior by Plaintiff. Subpoenaed records from the Mobile County Public School System, where she taught before going to medical school, show that she could not work in a hierarchical system even then, and was accused of being unprofessional. (See letter dated July 1, 2008 from D.H. Robinson-Walton, Principal of Calloway-Smith Middle School.)

Further, 6.0, Reappointment, of the Resident Agreement specially indicated:

> The duration of this Agreement is for a period of twelve (12) months. Reappointment and/or promotion to the next level of training is in the sole discretion of IHN and is expressly contingent upon several factors, including but not limited to, the following: recommendation by the Program Director, satisfactory completion of all training components, the availability of a position, satisfactory performance evaluations, full compliance with the terms of this Agreement, the continuation of IHN's and Program's accreditation, IHN's financial ability, and furtherance of IHN's objectives.

Inspira had the sole discretion as whether to offer Plaintiff an agreement for her second year of residency. Plaintiff, without any reasonable doubt, did not further Inspira's objectives, as she created a hostile work environment, refused to take instruction from senior residents, slept during lectures, threatened Dr. Nicole Zucconi, called Dr. Michael Geria and Dr. Nicole Zucconi liars, jeopardized patient safety, and tape recorded everyone at Inspira, including Human Resources personnel, other medical residents, Dr. Zucconi, Dr. Geria and countless others, and, remarkably, told everyone that she was recording them. Her actions were extremely unprofessional, did not further the objectives of Inspira and were a direct breach of the code of professionalism mandated by Inspira and the American Osteopathic Association.

### *Doctrine of Judicial Deference to Graduate Medical Education Autonomy in Academic Decision Making Requires this Honorable Court to Decline to Interfere with Inspira's Administrative Decision not to offer Plaintiff a Contract for her Second Year of Residency*

In a case with similar underlying facts to the instant case, the Supreme Court of New Jersey stated in *Hernandez v. Overlook Hosp.*, 149 N.J. 68 (1997) that "[r]esidents, unlike licensed physicians, are generally considered students subject to the academic requirements of a residency program." See *Hernandez v. Overlook Hosp.*, 149 N.J. 68, 74 (1997)(citing *Mohammed v. Mathog*, 635 *F. Supp.* 748, 751 (E.D. Mich. 1986) ("'[a]s a resident, plaintiff was undeniably a student, subject to the academic requirements of the . . . program'"); *Samper v. University of Rochester*, 139 Misc. 2d 580, 528 *N.Y.S.*2d 958, 961 (N.Y. Sup. Ct. 1987) "'[T]he residency program was both a job and an educational prerequisite to the career goals of the plaintiffs'"). The Court went on to state that "**[a]ssessing a student's academic performance must be left to the sound judgment of the individual academic institution**." See *Hernandez v. Overlook Hosp.*, 149 N.J. 68, 77 (1997)(citing *In re University of Med. & Dent., supra,* 144 N.J. at 536, 677 A.2d 721)(emphasis provided.) Moreover, "**[t]he process of rendering an academic decision frequently involves a subjective assessment of a student's ability to meet curriculum standards**", and "**[t]hose evaluations should be conducted in an academic, rather than a legal, environment because such decisions do not lend themselves to the traditional fact-finding process of civil litigation.**" See *Hernandez v. Overlook Hosp.*, 149 N.J. 68, 77 (1997)(emphasis provided.)

Similarly, in this case, Plaintiff, as a medical resident, should be considered a student. The residency program at Inspira, like any other residency program, is still an academic program. The residents are graded, evaluated and lectures are given. The fact that residents are paid is of no consequence to the fact that they are in an educational and academic program. Paragraph 2.8 of the resident contract that Dr. Chapman signed specifically states the resident is undertaking "Graduate Medical Education training". Even Inspira's letter of May 5, 2016 (Exhibit P-25 to the depositions), notifying plaintiff that her contract will not be renewed indicates that Dr. Michael Geria was the Director of Medical Education at Inspira. Inspira letterhead is captioned: "**Graduate Medical Education**". (emphasis provided.)

6

Accordingly, as a matter of law, the doctrine of judicial deference to graduate medical education autonomy in academic decision making requires this Honorable Court to decline to interfere with defendant's sound academic and administrative decision, considering the facts above, not to offer Plaintiff a contract for her second year of residency at Inspira. Inspira has wide academic discretion when it comes to assessing resident's academic performance, and as such, Inspira's academic judgment should be deferred to in this instance. Inspira, and *not* this Honorable Court, is the appropriate environment to make such decisions regarding its residents. Accordingly, this Honorable Court must decline to interfere with Defendant Inspira Health Network, Inc.'s *administrative* decision not to offer Plaintiff a contract for her second year of residency at Inspira Health Network, Inc.

## IV.    DAMAGES

To be determined at the time of trial. Defendant Inspira is not aware of what Plaintiff is demanding at this time.

Plaintiff is not entitled to any award, whether it be for alleged consequential or punitive damages on her alleged breach of contract count.

## V.    ESTIMATED LENGTH OF TIME NECESSARY FOR TRIAL

Two (2) weeks.

**THOMAS PASCHOS & ASSOCIATES, P.C.**

Dated:   September 23, 2022    By:    *Thomas Paschos*
                                          Thomas Paschos, Esquire
                                          30 North Haddon Avenue, Suite 200
                                          Haddonfield, NJ  08033
                                          (856) 354-1900
                                          E-mail:  tpaschos@paschoslaw.com
                                          Attorney for Defendant, Inspira Health
                                          Network, Inc.